Conor Huseby, OSB #063737
Assistant Federal Public Defender
Email: conor_huseby@fd.org
101 SW Main Street, Suite 1700
Portland, Oregon 97204
(503) 326-2123 Telephone
(503) 326-5524 Facsimile

Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                      Plaintiff,<br><br>    v.<br><br>MARIO CAMARENA-ZAMORA,<br><br>                      Defendant. | Case No. 3:22-cr-00144-IM<br><br>DEFENDANT'S SENTENCING MEMORANDUM |

On August 5, 2025, Mario Camarena-Zamora will appear before the Court for sentencing on his plea of guilty to one count of Illegal Reentry in violation of 8 U.S.C. § 1326. The government will recommend a sentence of 21 months, the low end of the recommended guidelines sentencing range after the application of an obstruction of justice enhancement pursuant to U.S.S.G. § 3C1.1. Mr. Camarena-Zamora objects to the application of the obstruction of justice enhancement and believes the low-end of the recommended guidelines sentencing range is 15 months, not 21 months. Moreover, Mr. Camarena-Zamora is eligible for a downward

Page 1 – SENTENCING MEMORANDUM

departure for "cultural assimilation" pursuant to Application Note 8 of U.S.S.G. § 2L1.2. Finally, regardless of whether Mr. Camarena-Zamora receives an obstruction of justice enhancement or a downward departure for cultural assimilation, the median length of imprisonment for 2,183 defendants sentenced for violations of 8 U.S.C. § 1326 over the last five years with an offense level of 15 (the offense level proposed by the government) and a criminal history category of II (Mr. Camarena-Zamora's undisputed criminal history category) is 15 months. Mr. Camarena-Zamora recommends that the Court sentence him to 15 months imprisonment.

### I. The Federal Sentencing Guidelines.

Mr. Camarena-Zamora has reviewed the presentence investigation report (PSR). As described in more detail below, there remain two guideline issues for the court to resolve.

- Mr. Camarena-Zamora agrees that the base offense level is 8 pursuant to U.S.S.G. § 2L1.2(a). PSR at ¶ 24;

- Mr. Camarena-Zamora agrees that, because prior to being removed from the country, he committed an offense for which the sentence imposed was two years or more, an eight-level increase to the offense level applies pursuant to U.S.S.G. § 2L1.2(b)(2)(B). PSR at ¶ 25;

- As argued in section II below, Mr. Camarena-Zamora *disagrees* that he should receive a two-level enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1. PSR at ¶ 28;

- Mr. Camarena-Zamora agrees that, because he clearly and timely demonstrated acceptance of responsibility for the offense, a three-level reduction to the offense levels applies pursuant to U.S.S.G. § 3E1.1. PSR at ¶¶ 31-32;

- Mr. Camarena-Zamora agrees that, because he has a criminal history score of three, his criminal history category is II. PSR at ¶ 45.

- Finally, as noted in the PSR, "the Court may wish to consider if the defendant qualifies for a departure under Application Note 8, based on cultural assimilation, since the defendant has continuously resided in the United States (apart from a short period in Mexico in 2018) since 1993, when he was 11 years old." PSR at ¶ 93. As argued in section III below, Mr. Camarena-Zamora should be granted a cultural assimilation departure.

Page 2 – SENTENCING MEMORANDUM

The guidelines are, of course, advisory, and only "one factor among the § 3553(a) factors that are to be taken into account in arriving at an appropriate sentence." *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc) (citing *Kimbrough v. United States*, 552 U.S. 85, 101 (2007)). The "overarching" consideration is to "impose a sentence 'sufficient, but not greater than necessary' to accomplish the goals of sentencing...." *Kimbrough*, 552 U.S. at 101; 18 U.SC. § 3553(a). Mr. Camarena-Zamora believes that, regardless of how the Court resolves the guidelines disputes in this case, a sentence of 15 months—the median sentence for defendants sentenced for illegal reentry with the same offense level and criminal history category over the last five years across the country—is "sufficient, but not greater than necessary" to meet the purposes of sentencing contained in 18 U.S.C. § 3553(a).

## II.     The Court Should Not Apply An Obstruction Of Justice Enhancement.

Pursuant to U.S.S.G. § 3C1.1, a person who "willfully obstructed or impeded . . . the administration of justice" receives a two-level increase in their offense level. Here, in June 2023, Mr. Camarena-Zamora stopped reporting for pretrial supervision. Shortly thereafter, the Court vacated Mr. Camarena-Zamora's trial date. ECF 32. On January 27, 2025, Mr. Camarena-Zamora was arrested locally without incident. PSR at ¶ 16. During his time in warrant status, Mr. Camarena-Zamora sustained no new law violations.

In fact, during his time in warrant status, Mr. Camarena-Zamora returned to working for Canby Drywall, a company he's worked for on-and-off since 2005. Att. E; PSR at ¶ 75. Mr. Camarena-Zamora's supervisor states Mr. Camarena-Zamora was "an outstanding worker who was always on time and willing to help when asked." Att. E. Mr. Camarena-Zamora was laid off when work at the company slowed down. *Id.* Mr. Camarena-Zamora's partner of the last three years, Angelica Jones, confirms that Mr. Camarena-Zamora was working construction. Att. D. In

addition, Ms. Jones states Mr. Camarena-Zamora took care of her three-year-old child—who Mr. Camarena-Zamora treats as his own—while she was at work. *Id.* Ms. Jones states Mr. Camarena-Zamora is an "amazing person" who "helps everybody." *Id.*

The government argues that Mr. Camarena-Zamora's failure to report to pretrial and time spent in warrant status qualify him for an obstruction of justice enhancement. Application Note 4 to U.S.S.G. § 3C1.1 provides a non-exhaustive list of conduct covered by the adjustment. While "willfully failing to appear, *as ordered, at a judicial proceeding*" is covered conduct, merely remaining in warrant status after a pretrial violation is not. U.S.S.G. § 3C1.1, App. N. 4(E) (emphasis added). While it is true that absconding from pretrial supervision *can* qualify a person for an obstruction of justice enhancement (*see United States v. Draper*, 966 F.2d 982, 986 (9th Cir. 1993)), courts in the Ninth Circuit have generally only applied the enhancement when a defendant absconds from supervision *and* engages in other obstructive conduct such as committing new crimes or attempting to flee the jurisdiction.

In *Draper*, the adjustment was applied after the defendant absconded from a drug treatment center before sentencing *and* was arrested for having committed another robbery. *Draper*, 996 F.2d at 983. In *United States v. Manning*, 704 F.3d 584 (9th Cir. 2012), the defendant received an obstruction of justice enhancement after he lied to pretrial services about his possession of firearms while on pretrial supervision, failed to appear at a pretrial violation hearing, and then fled to Mexico. In *United States v. Haladjian*, 603 Fed.Appx. 561, 564 (9th Cir. 2015), the defendant purchased a one-way ticket to Jordan and checked in for his flight. The Ninth Circuit held "his conduct constituted *an attempt to flee* and therefore warranted the obstruction of justice enhancement." *Id.*

Page 4 – SENTENCING MEMORANDUM

Here, Mr. Camarena-Zamora 1. Did not fail to appear at a judicial proceeding in this case, 2. Committed no other pretrial violations, 3. Was arrested locally, rather than having fled the jurisdiction, 4. Committed no other crimes, and 5. According to witnesses, worked and lived a productive life while in warrant status. Under these circumstances, an obstruction of justice enhancement is not appropriate.

### III. Mr. Camarena-Zamora Should Receive A Downward Departure Pursuant To Application Note 8 Of U.S.S.G. § 2L1.2 For "Cultural Assimilation."

Pursuant to Application Note 8 of U.S.S.G. § 2L1.2, a defendant convicted of Illegal Reentry should be considered for a departure in cases where: "(A) the defendant formed cultural ties primarily with the United States from having resided continuously in the United States from childhood, (B) those cultural ties provided the primary motivation for the defendant's illegal reentry or continued presence in the United States, and (C) such a departure is not likely to increase the risk to the public from further crimes of the defendant." *Id.*

Here, apart from a short period spent in Mexico in 2018, Mr. Camarena-Zamora has resided continuously in the United States since was 11 years old. All Mr. Camarena-Zamora's family, including his parents, all his siblings, and his five children, reside in the United States. The primary—and really the *only*—reason Mr. Camarena-Zamora returned to the United States following his single deportation in 2018 was to be with his family, and specifically the two children he shares with Sasha Turner, who Mr. Camarena-Zamora was in a relationship with until 2020. PSR at ¶ 62. Mr. Camarena-Zamora's brother, Omar, states that when his brother was deported to Mexico in 2018, "he was returned to a country that he had not been to since he was very young." Att. C at 1. Mr. Camarena-Zamora returned to the United States because the separation from his children was "affecting both him [Mr. Camarena-Zamora] and his children."

Page 5 – SENTENCING MEMORANDUM

*Id.* Omar states, "Our parents brought us here and it wasn't our choice." *Id.* "We love this country." *Id.*

As to the risk to the public, while it is true Mr. Camarena-Zamora has number of arrests and convictions, the vast majority of those arrests and convictions occurred as a gang involved youth growing up in poverty and with little supervision in a gang infested town in California, or in his 20's. Mr. Camarena-Zamora is now 43 years-old, and was last convicted of a crime in 2013, with the conduct having occurred in 2011, when Mr. Camarena-Zamora was 29. PSR at ¶ 44.

Reports of his more recent conduct from friends and family are positive. As noted, his partner Sasha Turner describes Mr. Camarena-Zamora as an "amazing person" who encouraged her to return to school to better herself. *Id.* Mr. Camarena-Zamora's sister, Marisela, states that Mr. Camarena-Zamora is "a good brother." Att. B. "He worries about us. He asks about our kids." *Id.* Recently, when their father underwent cancer treatment and their mother had a stroke, Mr. Camarena-Zamora chipped in financially to help with the cost of medicine despite his meager resources. *Id.* Mr. Camarena-Zamora's sister, Alejandra, states her brother is a "present father" who "often talks to his children." Att. A at 2. Alejandra states, that when their parents were sick last year, Mr. Camarena-Zamora chipped in financially and was a source of emotional support to their sister Marisela who was balancing a demanding job with the need to transport their father for cancer treatment. *Id.* Alejandra states her brother is a "good person" whose heavily tattooed appearance "does not demonstrate who he is." *Id.* Mr. Camarena-Zamora has helped the local community by interpreting for community members and showing compassion for others. *Id.* "We came from nothing, and he does not hesitate to give to others." *Id.*

**IV.   Regardless Of Whether Mr. Camarena-Zamora Receives An Obstruction Of Justice Enhancement Or Cultural Assimilation Departure, A Sentence Of 15 Months Is Sufficient, But Not Greater Than Necessary Under 18 U.S.C. § 3553(a).**

Regardless of how the guidelines disputes are resolved, a sentence of 15 months is "sufficient, but not greater than necessary" under 18 U.S.C. § 3553(a). Mr. Camarena-Zamora was brought to the United States as a child, before he had a choice in the matter. He grew up in the small town of Huron, California. PSR at ¶ 59. Richard Street, a Pulitzer Prize nominated Ph.D. journalist, photographer, and author who reports on farm labor created a photographic essay documenting eight years of research in Huron called "The Mean Streets of Huron."[1] Noting that Huron is "the poorest town in California," Street described the town as "[u]gly, dusty, dangerous, corrupt, and impoverished, Huron is a giant farm labor exploitation camp." *Id.*

Mr. Camarena-Zamora grew up in that labor exploitation camp with little adult supervision. His sister, Alejandra, states their parents worked from 4:00 or 5:00 in the morning to 6:00 in the evening, earning $4.00/hour in the fields. Att. A at 1. The town was "full of other farm workers and gang members." *Id.* As children, the Camarena-Zamora siblings were often alone and took care of one another. *Id.* Mr. Camarena-Zamora's brother, Omar, states Mr. Camarena-Zamora was responsible for getting his younger sister, Alejandra, ready for school, brushing her hair, and then taking her to and from school each day. Att. C at 1.

Later in life, Mr. Camarena became a father himself, and his brother Omar states Mr. Camarena-Zamora's "happiness and purpose comes from his children." *Id.* at 2. Now, Mr. Camarena-Zamora faces expulsion to Mexico, a punishment the Supreme Court calls a "particularly severe penalty" (*Padilla v. Kentucky*, 559 U.S. 356, 365 (2010)) and a "lifetime of

---

[1] Available at: https://phmuseum.com/projects/the-mean-streets-of-huron

Page 7 – SENTENCING MEMORANDUM

banishment in addition to the punishment" he faces for having reentered the country to be with his children. *Jordan v. DeGeorge*, 341 U.S. 223, 232 (1951). Thankfully, Mr. Camarena-Zamora's children are all getting older, and while he does not want to return to Mexico, Mr. Camarena-Zamora has contacts in Tijuana who will help him find work and housing. PSR at ¶ 63. Mr. Camarena-Zamora is determined to rebuild his life in Mexico, and looks forward to visits from his children, particularly those that live in California and can easily make the drive to visit their father. *Id.*

A sentence of 15 months—in addition to the months Mr. Camarena-Zamora will spend in immigration custody awaiting deportation and his painful expulsion to a country he barely knows—is sufficient, but not greater than necessary to deter Mr. Camarena-Zamora and others, provide just punishment, and protect the public. Indeed, as noted above, of the 2,183 defendants sentenced under U.S.S.G. § 2L1.2 with an offense level of 15 and a criminal history category of II, the average sentence was 16 months and the median sentence was 15 months.

Finally, the circumstances of his arrival in the United States as a child, and the reasons for his return are highly mitigating under 18 U.S.C. § 3553(a). Mr. Camarena-Zamora did not cross the border to sell drugs, commit crimes, or even to earn money—he returned to the United States because his relationship with his children, the most sacred obligation we have as human beings, compelled him to. Moreover, unlike many defendants sentenced for illegal reentry, Mr. Camarena has only a single removal and a single reentry. Mr. Camarena-Zamora knows he cannot reenter the country again, and with his children getting older, it will be easier for him to not do so. But, in the final analysis, the crime Mr. Camarena-Zamora committed was crossing a border to be with his children.

Page 8 – SENTENCING MEMORANDUM

**Conclusion.**

For all the reasons stated in this sentencing memorandum, the Court should decline to impose an obstruction of justice enhancement, grant a cultural assimilation departure, and regardless of how the guidelines disputes are resolved, sentence Mr. Camarena-Zamora to 15 months in the Bureau of Prisons.

Dated: July 31, 2025.

*/s/ Conor Huseby*
Conor Huseby, OSB # 06373
Assistant Federal Public Defender
